# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBYN L. F.,[1] <br> Plaintiff, <br> v. <br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br> Defendant. | Case No. EDCV 19-00656-RAO <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Robyn L. F. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED, and the matter is REMANDED.

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the current Commissioner of Social Security, is hereby substituted as the defendant herein.

## II. PROCEEDINGS BELOW

On July 17, 2015, Plaintiff filed a Title II application for a period of disability and DIB alleging disability beginning on August 17, 2014. (Administrative Record ("AR") 101, 189.) Her application for a period of disability and DIB was denied on December 4, 2015, and upon reconsideration on February 25, 2016. (AR 117, 126.) Plaintiff filed a written request for hearing, and a hearing was held on February 14, 2018. (AR 35-86, 132.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 35-86.) On April 17, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from August 17, 2014, through the date of decision. (AR 28-29.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (*See* AR 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2014, the alleged onset date ("AOD"). (AR 18.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: chronic pain syndrome; status post hip replacement; osteoarthritis of the lumbar spine and knees; degenerative joint disease of the left shoulder; degenerative disc disease of the lumbar spine and cervical spine with spinal canal and neural foraminal stenosis; and cervical radiculopathy. (AR 19.) At **step three**, the ALJ found that Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 22.)

Before proceeding to step four, the ALJ found that through September 30, 2013, Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . except she will require the option to change positions from sitting to standing once per hour for 10 minutes while

remaining on task, in addition to normal breaks and lunch; can frequently push or pull with the left upper extremity; can never reach overhead with the left upper extremity; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance or stoop; can occasionally kneel, crouch or crawl; can have occasional concentrated exposure to extreme cold; and can have no concentrated exposure to hazards such as moving machinery and unprotected heights.

(AR 22.)

At **step four**, the ALJ found that Plaintiff has been unable to perform her past work through the date last insured. (AR 26.) At **step five**, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 27.) Accordingly, the ALJ determined that, as to Plaintiff's claim for period of disability and DIB, Plaintiff had not been under a disability from the AOD through April 17, 2018. (AR 28-29.)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the

Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical evidence of record; and (2) whether the ALJ properly evaluated Plaintiff's credibility and subjective complaints. (Joint Submission ("JS") 2.) For the reasons discussed below, the Court agrees with Plaintiff regarding the assessment of her testimony and remands on that ground.

### A. The ALJ Improperly Evaluated Plaintiff's Subjective Complaints[3]

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility and subjective complaints. (*See* JS 18-22, 26-27.) The Commissioner contends that the ALJ provided well-supported reasons for discounting Plaintiff's subjective allegations and thus the ALJ's decision should be upheld. (JS 23-26.)

#### 1. Plaintiff's February 14, 2018 Testimony

Plaintiff lives with her husband and daughter. (AR 53.) On a typical day, Plaintiff spends the day sitting on her couch. (*Id.*) Plaintiff does not do housework. (AR 54.) Plaintiff's husband cooks and does laundry. (*Id.*) Plaintiff does not take

---

[3] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

4

care of anyone else and is not primarily responsible for her pets. (*Id.*) She does not do yardwork. (*Id.*) She does not exercise because it is not comfortable. (*Id.*) However, she does walk to the mailbox. (*Id.*)

Plaintiff testified that she used to clean the pool, do laundry, and cook, but stopped two years ago because cooking required her to stand for too long and the laundry basket was too heavy. (AR 55.) She would have to separate her tasks into different days. (AR 56-57.) For example, one day she would wash the darks and another day she would wash the lights. (*Id.*) It would take her two or three hours to complete her task. (AR 57.) During that time, she would sit down and rest because her lower back, hip, and hands would hurt. (*Id.*)

Plaintiff testified that she does not go out, but did go out the day of the Super Bowl to a friend's house. (AR 54.) She does not see friends unless they go to her house. (*Id.*) She has a driver's license and drives two or three times per week primarily for doctors' appointments. (AR 44-45.) Plaintiff also drives once a week to check on her parents. (AR 45, 64-65.) The drive to her parents' home is approximately 15 to 20 miles roundtrip. (AR 45, 65.) Plaintiff spends time with her parents, but does not do things for them. (AR 65.) Plaintiff's friend drove her to the hearing. (AR 44, 64.) Plaintiff uses a cane to help her walk. (AR 52.)

Plaintiff explained that she is unable to work because she cannot lift things. (AR 47.) She is also unable to sit or stand for long periods of time. (*Id.*) She feels uncomfortable all the time. (*Id.*) Her hands hurt when she grabs things. (*Id.*) Plaintiff is left-handed and testified that her left hand is "sore all the time." (*Id.*)

Plaintiff worked for Stater Brothers for 25 years. (AR 47-49.) During her time at Stater Brothers, Plaintiff worked as a receiver and worked the night crew. (AR 47-48.) As a receiver, she "broke down pallets" and "built pallets." (AR 47.) Plaintiff would also "check," "stock shelves," and "throw frozen food." (AR 47-48.) When Plaintiff worked on the night crew, Plaintiff stocked shelves. (AR 48.) This work involved heavy lifting, in that Plaintiff had to break down pallets, wheel the

items to the aisle, and stock the items on the shelves, including items as heavy as dog food bags. (*Id.*) When the store opened, Plaintiff would work the cash register. (AR 49.)

Plaintiff left her job in September 2014 because she had a hysterectomy, followed by a hip replacement. (AR 49.) Due to the procedures, Plaintiff stopped working for six months. (*Id.*) Plaintiff testified that she was required to return to work in February 2015, because failure to return to work would have resulted in her termination. (*Id.*) She explained that she was unable to continue with the job because it was "too physical" and "too hard." (AR 50.) In May 2015, Plaintiff heard a "pop" in her hip that had just been replaced. (*Id.*) Plaintiff is still not aware if any damage resulted. (*Id.*)

As to her lumbar spine, Plaintiff testified that issues with her lower back prevent her from working because she cannot lift anything, and she cannot sit or stand for long periods of time. (AR 50.) Plaintiff explained that even sitting at the hearing was "uncomfortable" because of the pressure on her back. (AR 51.)

Plaintiff also testified that due to a shoulder injury she is unable to lift over her head. (AR 51.) Her left shoulder will "snap" and "pop." (*Id.*) Plaintiff has been told that she will need a knee replacement. (*Id.*) Plaintiff takes Cymbalta for depression, but does not see a therapist. (AR 52.) She also explained that she has root degeneration and root compression on her upper back causing "shooting pains." (AR 53.) The pain happens when she is "just sitting." (*Id.*) As a result, Plaintiff has trouble sleeping. (*Id.*) Plaintiff tosses and turns, when one side starts to get sore, she has to turn a different way. (*Id.*) Plaintiff also has trouble hearing. (AR 39-40.)

Plaintiff has consulted with a neurosurgeon regarding her lumbar spine. (AR 57-58.) The neurosurgeon has suggested that Plaintiff have a spinal cord simulator inserted in her back to help her upper and lower back, and possibly her hip. (AR 58.) The simulator would also be expected to help with issues related to her cervical spine. (AR 58-59.)

Plaintiff testified that she experiences pain in her lower back "[c]onstantly, every day." (AR 58.) She has experienced more pain since her hip replacement, and even more pain after the recent hip replacement redo. (*Id.*) She also experiences pain in her neck. (AR 59.) Plaintiff has also had constant pain in her left knee. (*Id.*) Plaintiff had carpal tunnel surgery to her left hand, but continues to experience pain. (AR 59-60.) After a fall in September, Plaintiff feels "pain all the way up the left arm" and both of her "hands fall asleep." (AR 60.)

Plaintiff sees a pain management doctor and an orthopedic doctor. (AR 60.) Plaintiff manages her pain with Norco and meloxicam. (AR 61.) Additionally, Plaintiff controls her pain by getting in her pool, taking a warm bath, and using a TENS machine[4] every day on her lower back. (*Id.*) Plaintiff finds that she is most comfortable in the pool because there is "no weight." (AR 62.) If she were not in the pool, Plaintiff would sit or lay down. (*Id.*) However, she would not be sitting up right. (*Id.*) Out of a 16-hour day, Plaintiff lays down one or two hours. (AR 63.) Plaintiff would then need to get up, then sit to try to get comfortable again. (*Id.*) She thinks that she could sit up for an hour before having to get up and walk around. (*Id.*) Plaintiff has to shift from sitting to walking because she "get[s] stiff." (*Id.*) Plaintiff testified that she would be working if not for her conditions. (AR 67.)

### 2. Plaintiff's Function Report

On September 25, 2015, Plaintiff prepared a function report. (*See* AR 230-238.) Plaintiff lives in a house with family. (AR 230.) Plaintiff's conditions limit her ability to work because her former job required that Plaintiff carry and stack 40-

---

[4] A TENS unit is a device that reduces pain by "send[ing] electrical pulses through the skin to start your body's own pain killers. The electrical pulses can release endorphins and other substances to stop pain signals in the brain." University of Iowa Hospitals and Clinics, Transcutaneous electrical nerve stimulator (TENS), https://uihc.org/health-topics/transcutaneous-electrical-nerve-stimulator-tens (last accessed January 28, 2020).

pound pallets, break down pallets, bend down to check pallets in, stand for six to eight hours, and walk back and forth to the check stand. (*Id.*)

Plaintiff spends her time reading the paper, watching television, in the pool, "walking around to avoid stiffness," picking up around the house, and trying to make dinner. (AR 231.) She takes care of her husband and tries to make dinner and do laundry. (*Id.*) Plaintiff is also responsible for feeding and letting out her pets. (*Id.*) However, Plaintiff's husband helps by cleaning the cat boxes and cleaning up after the dogs. (*Id.*)

Before her condition, Plaintiff was able to work, do sports, hike, sleep, and enjoy life. (AR 231.) Now, Plaintiff swims because she feels weightless and experiences no discomfort in the pool. (*Id.*) Plaintiff explains that she is unable to sleep on her left side because her arm falls asleep, but when she sleeps on her back it hurts, and she cannot sleep on her right side or her hip will hurt. (*Id.*)

As to personal care, Plaintiff's inability to lift her left arm makes it difficult for her to shampoo her hair, put her hair up, and shave. (AR 231.) Plaintiff also has difficulty extending her left arm back, making it difficult to put on a bra and shirt. (*Id.*) When using the toilet, Plaintiff cannot "get [her] left arm around back." (*Id.*) She also has difficulty putting on her shorts or pants because bending down hurts her back and hip. (*Id.*) However, Plaintiff does not need reminders to take care of her personal needs or to take her medicine. (AR 232.)

Plaintiff prepares meals a couple of times per week. (AR 232.) Because she is unable to stand for too long to cook, she spends five to ten minutes preparing frozen dinners or salads. (*Id.*) Plaintiff does not cook every day and she does not cook big meals. (*Id.*) At most once a week, Plaintiff can do some light dusting, can put dishes in the dishwasher, and can wash small loads of laundry. (*Id.*) It takes Plaintiff 10 to 15 minutes to complete each item. (*Id.*) Plaintiff explains that she needs help lifting laundry, taking items out of the dryer, carrying the basket down the stairs, and unloading the dishwasher. (*Id.*) As to her ability to do yardwork, Plaintiff is "in too

much discomfort and cannot push or pull anything," and cannot bend down. (AR 233.)

Plaintiff goes outside daily. (AR 233.) When going out she usually drives or rides in a car. (*Id.*) She is able to go out alone. (*Id.*) Plaintiff shops in stores for groceries, with assistance, once every two weeks. (*Id.*) It takes her about one hour and a half. (*Id.*) Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook or money orders. (*Id.*)

Plaintiff's hobbies include, reading, watching television, hiking, playing soccer and softball, bike riding, and riding her motorcycle. (AR 234.) Plaintiff reads and watches television every day, but is "not physically able to do the rest anymore." (*Id.*) She cannot play soccer or softball, hike, or ride her motorcycle. (*Id.*) Once a week, Plaintiff will swim or have lunch with friends. (*Id.*) Plaintiff visits local restaurants. (*Id.*) Plaintiff explains that she has problems with her husband due to her physical limitations which have "added stress to him" because he has to work and do housework, and she is unable to go on hikes with him. (AR 235.) Since her condition began, Plaintiff can no longer play in the soccer and softball leagues that she used to play in and can no longer hike with friends. (*Id.*)

Plaintiff's condition affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (AR 235.) Plaintiff explains that she cannot stoop down, bend, lift more than five pounds, lift over her head, or stand longer than 30 minutes. (*Id.*) As to her ability to walk, Plaintiff explains that she is always in discomfort. (*Id.*) However, Plaintiff resumes walking "right away [because] it hurts to sit." (*Id.*) Plaintiff does not have an issue paying attention, she can finish what she starts, and can follow written and spoken instructions very well. (*Id.*) She gets along "wonderfully" with authority figures and has never been fired or laid off due to problems getting along with others. (AR 236.) However, she does not handle stress well and considers herself a "stressmonger." (*Id.*) In particular, she stresses because she is not working and has to pay bills. (*Id.*) She handles changes to her routine fine.

(*Id.*) Plaintiff takes medication for her illnesses, but none have side effects. (AR 237.)

Finally, Plaintiff remarks that she is unable to continue working because she had hip surgery, suffers from severe arthritis, and her doctors have instructed her not to stoop, bend, lift more than five pounds, or stand for more than thirty minutes. (AR 237.)

### 3.   Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 4.   Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 23.) The ALJ found that Plaintiff's statements were inconsistent

with (1) Plaintiff's activities of daily living and (2) the objective medical evidence.[5] (AR 23.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Activities of Daily Living

The ALJ found that Plaintiff's "activities of daily living [were] inconsistent with [Plaintiff's] statements regarding the alleged intensity, persistence and limiting effects" of her symptoms. (AR 23.) Specifically, the ALJ points to Plaintiff's ability "to perform some of the personal care tasks, prepare simple meals, do light dusting, put dishes into the dishwater, do the laundry, drive, ride in a car, shop in stores, go out alone, and spend time with friends and others." (AR 23, citing 231-34.) Additionally, the ALJ cites to Plaintiff's ability "to perform personal care tasks, drive, go shopping, pay bills, handle money, and cook." (AR 23, citing AR 457-58.) The ALJ notes that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 23.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec.*

---

[5] The ALJ also found that Plaintiff's statements regarding "intensity, persistence, and limiting effects" of her condition were also inconsistent with "other information in the case record." (AR 23.) However, in support, the ALJ cites to Plaintiff's activities of daily living and the objective medical evidence. (*See id.*) This is duplicative of the reasons provided by the ALJ and does not form a separate, independent reason for discounting Plaintiff's subjective symptom testimony.

11

*Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

First, Plaintiff argues that the ALJ mischaracterized Plaintiff's activities of daily living by "cherry-picking from the record." (JS 21.) In support, Plaintiff, points to her function report, where she explained that she "tried" to do laundry and make dinner. (JS 21, citing AR 231.) Plaintiff was unable to "stand long enough to prepare everyday meals, but instead only had the ability to prepare a frozen meal." (JS 21, citing AR 231-32.) Plaintiff also cites to the difficulty she experienced when caring for her personal needs. (JS 21, citing AR 231.) Additionally, as to the ALJ's reliance on Plaintiff's ability to do laundry, Plaintiff contends that she was only able to do laundry once a week for no more 10 to 15 minutes and "needed to rely on others to help her." (JS 21, citing AR 233.) Plaintiff also points to two treatment notes where Plaintiff self-reported "[c]onstant LBP pain that limits [activities of daily living]" and "[d]ecreased strength and endurance that makes [activities of daily living] difficult to perform." (JS 21, citing AR 963, 968.)

The Commissioner does not respond to Plaintiff's argument that the ALJ engaged in "cherry-picking," but does argue that Plaintiff's contentions that she performed "tasks slowly, or with breaks . . . does not undermine the ALJ's findings." (JS 25.) In support the Commissioner cites to *Rollins v. Massanari*. (JS 26-27, citing 261 F.3d 853, 857 (9th Cir. 2001).) In *Rollins*, the Ninth Circuit found that where the claimant's testimony was "somewhat equivocal about how regularly" claimant was able to perform certain activities and the "ALJ's interpretation of her testimony may not be the only reasonable one," the Court should not "second-guess" the ALJ's interpretation so long as the ALJ's interpretation is reasonable and supported by substantial evidence. 261 F.3d at 857. The claimant's daily activities in *Rollins*, included, caring for her two young children, cooking, doing laundry, shopping, and leaving the house daily for doctor's appointments, taekwondo lessons and soccer games. *Id.*

"An ALJ errs when he or she mischaracterizes a claimant's testimony by ignoring reports that daily activities are conducted with assistance, with great pain, or with limitation-related disruptions." *Furtado v. Colvin*, No. 13-CV-04063-HRL, 2017 WL 1365208, at *3 (N.D. Cal. Apr. 14, 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)). Here, the ALJ mischaracterizes Plaintiff's function report statements. While Plaintiff notes that she is able to do laundry, engage in light dusting, put dishes in the dishwasher, shop in stores for groceries, Plaintiff also notes that she requires assistance when shopping for groceries, doing laundry, and unloading the dishwasher. (AR 232-33.) Furthermore, the ALJ noted Plaintiff's ability to cook simple meals (AR 23), but failed to acknowledge that those meals were either frozen meals or salads (*see* AR 232). Similarly, the ALJ referred to Plaintiff's ability to "perform some of the personal care tasks" (AR 23), yet did not acknowledge Plaintiff's statement that she had difficulty putting on a bra and shirt, shampooing her hair, putting her hair up, and shaving (*see* AR 231). Plaintiff also had trouble using the toilet because she could not "get [her] left arm around back." (AR 231.) She also expressed difficulty putting on shorts and pants because "bending hurts [her] back and hip." (*Id.*)

Additionally, it appears that the ALJ has ignored some evidence without providing any explanation. *See Leonard v. Berryhill*, No. 16-CV-03988-BLF, 2017 WL 3130031, at *4 (N.D. Cal. July 24, 2017) (noting that an ALJ may not "cherry-pick" the evidence, without providing an adequate explanation). In reviewing Plaintiff's subjective symptom testimony, the ALJ notes that Plaintiff's "statements in the written submissions mirror the subjective complaints from [Plaintiff's] testimony." (AR 22.) However, the Court's review of the record shows that while Plaintiff's statements in her September 25, 2015 function report and her February 14, 2018 testimony contain some of the same underlying complaints, Plaintiff's testimony indicates a significant change in her daily activities.

The ALJ appears to have relied exclusively on Plaintiff's September 25, 2015 function report and an examination by a consultative examiner. (AR 23.) However, Plaintiff also testified at the February 14, 2018 hearing as to how her conditions had impacted her ability to engage in certain activities. (*See* AR 37-67.) The ALJ failed to discuss any of Plaintiff's hearing testimony. At the February 14, 2018 hearing, Plaintiff explained that while she used to do laundry, cook, and clean the pool, she stopped engaging in those activities two years ago because she could not stand for long periods of time and could not carry the laundry basket. (AR 55.) Plaintiff testified that it is now her husband who cooks and does the laundry. (AR 54.) Relying on a three-year-old function report, the ALJ found that Plaintiff could prepare simple meals and do laundry. (AR 23.) Similarly, where Plaintiff had noted in her function report that she could do light dusting and put the dishes in the dishwasher (AR 232), Plaintiff later testified that she could not do any housework (AR 54). The ALJ also notes that Plaintiff is able to "shop in stores, go out alone, and spends time with friends, and others," but Plaintiff testified that she only visits with friends when they visit her at home (AR 23, 54).

The ALJ's omission of Plaintiff's hearing testimony and mischaracterization of Plaintiff's written statements cannot support the ALJ's finding that Plaintiff's activities of daily living were inconsistent with Plaintiff's subjective symptom testimony. *See Rawa v. Colvin*, 672 F. App'x 664, 666 (9th Cir. 2016) (finding that where "the ALJ omitted a number of salient and dispositive facts and details when recounting [claimant's] activity level," including the fact that claimant drove only a couple of times per week and the fact that she experienced pain while engaged in certain activities, "[s]uch an inaccurate representation of the record cannot constitute a specific, clear, and convincing reason for rejecting" claimant's subjective symptom testimony); *Corless v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 3d 1172, 1178 (D. Ariz. 2017) (finding that the ALJ committed error where the "ALJ conspicuously

omitted the pain and difficulties [p]laintiff experiences performing even the simplest daily activity").

Second, Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony because Plaintiff's daily activities are not readily transferable to a work environment. (JS 22.) However, the Commissioner contends that transferability "is not dispositive, as 'even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" (JS 26, quoting *Molina*, 674 F.3d at 1113.) Plaintiff counters that she is not contending that she suffers from a "'totally' disabling impairment." (JS 27.)

The fact that Plaintiff performs some daily activities does not detract from her overall credibility, as the record does not show that her daily activities consume a substantial part of Plaintiff's day. Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison*, 759 F.3d at 1016). Additionally, as noted by Plaintiff, the Ninth Circuit has found that a claimant's ability to do house chores, cook simple meals, bathe, pay bills, write checks, and occasionally go shopping "are not similar to typical work responsibilities." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017); *see Enriquez v. Berryhill*, No. EDCV 17-1651 SS, 2018 WL 3339673, at *5 (C.D. Cal.

15

July 6, 2018) (finding that the ALJ erred in relying on Plaintiff's ability to drive, run errands, prepare simple meals, do some household chores, and engage in personal grooming).

In sum, the Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

### b. Reason No. 2: Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting symptom testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

### 5. Conclusion

In sum, the ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony. Accordingly, remand is warranted on this issue.

### B. The Court Declines to Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

///

C. **Remand for Further Administrative Proceedings**

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony. On remand, the ALJ shall reassess Plaintiff's subjective allegations. The ALJ shall then reassess Plaintiff's RFC and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

///
///
///
///
///
///
///

17

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 31, 2020

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**